Welch, C. J.
The legal questions made and argued in the case are : 1. Whether the statute of Kentucky has the effect to make these notes subject to set-off in Ohio ; 2. Whether the set-off, if allowable at all, should be allowed except as against the first note, the only one that had matured when defendant received notice of the indorsement; *171 and 3. Whether these checks procured by the defendant' operated as an assignment to him of the deposits they were' drawn upon; Counsel have elaborately argued all three of these questions. It is evident, however, that the consideration of the two last named questions becomes unnecessary, if the first is1 to be determined in favor of the plaintiff. A majority of us incline so to determine that question. We think the laws of Kentucky are powerless to control the laws of set-off outside of that state. They may fix the character of the contract or instrument, as being negotiable or non-negotiable, and its construction, but they can not determine whether a contract or instrument of the character so fixed shall be subject to set-off in an action brought thereon outside the state. Laws of set-off relate to the remedy, and not to the right, and therefore' the law of the forum, and not the law of the place of the' contract, must govern in such cases. If this be not so, then any statute changing the law of set-off’ would, so far as subsisting or past contracts are concerned, be &• law impairing the validity of contracts, and void. I suppose the-legislature of Ohio has the constitutional power to repeal all her laws of set-off’, and require each party to bring a separate action for his demand. I think it has the same power to do so that it has to change its laws as to the organization of the courts, the form of action, its limitation, or the testimony on the trial. The real object of laws of set-off is to prevent multiplicity of actions. No such thing-was allowed at common law. It is the creature of statutes. In different states the laws of set-off are quite different.. Whether any of the states are without such laws, I do not know. Counsel concede that the set-off in this case must be of matters or claims which are made the subjects of set-off by the laws of Ohio. Is not this a concession of the-whole question ? If the laws of Ohio allowed no set-off, then' none could be had in the case; but if by her laws* unliquidated damages, as for slander, or assault and battery, could be set off, the defendant could avail himself of their provisions. I say this is a concession of the whole question,. *172 because it is an admission that the statute of Kentucky is ■dependent for its vigor and vitality in the present case upon the laws of Ohio, and if enforced as the law of the case, it is enforced because Ohio has adopted it, and made it her own law. It is an admission that the case must be governed by the laws of set-off in Ohio applicable to such paper. Now, what is the character of this paper, as fixed by the statute of Kentucky? What is the true .construction of that statute? Is it merely a statute changing the form of the action, by allowing a party who has a mere equitable right to bring the action? Was it the purpose of the act to ■.single out from the numerous classes of choses in action these three—notes, bonds, and bills—and authorize the ■equitable owner of these, and of these only, to sue in his own name? If so, why insert an express provision making them “assignable?” They were assignable, so as tó pass an equitable title, before the statute, as all other choses -were, and still are. A majority of us think that such is uot the true construction of this statute. We think it enables the holder of such instruments to transfer his legal title to the assignee. It is not a statute to impede or take .away negotiability, but a statute authorizing it, under certain restrictions and limitations. It is, moreover, a statute in derogation of what might be regarded as the common law of the country, and should, therefore, be strictly construed. It is enough, however, for the present purpose, to say that”it makes such notes “ assignable” so as to pass the legal title; that its provision in regard to set-off can have no operation outside of Kentucky; and that we have no law in Ohio which enables the maker of snch notes, in an action thereon by the legal owner, to set off an independ■ent demand against the payee or indorsor. Our code makes no changes in the law of set-off, or as to the negotiable character of such paper. It merely authorizes the equitable assignee to maintain a suit in his own name, instead of maintaining it in the name of the assignor or in a •court of equity. Before the enactment of the code, we had ■■no law, and we now have none, authorizing a set-off, in an *173 action by the legal owner’ of a bill or’ note, of a claim against the assignor, whether acquired before or after notice of the assignment. The only set-offs allowed by our-statutes, as they existed before the enactment of the code, were of claims against the plaintiff—that is, claims against the legal owner of the note. Suppose this actiou had been brought before the enactment of the code. It would then,. as now, have had to be brought in the name of the bank, and not in the name of Homans. What statute of Onio • would have authorized a set-off, in such a case, of any claim other than a claim against the bank itself? There was no-such statute. In such a case, the defendant could have set up as defence any infirmity which inhered in the note, or ■ its consideration, or any payment, accord, or counter-claim, which showed that no right of action existed at 'the time of the assignment. In other words, he could have defeated the action by showing that the plaintiff took nothing by the assignment; but he could not have defeated it by setting up a claim which was the ground of a separate action against the assignor. Outside of Kentucky, as well as in Kentucky, I concede to this statute the effect of making such notes, in the hands of the assignee, subject to defenses ■ which inhere in the paper itself, or which go to its consideration or its discharge. Were we to follow the rulings of the Kentucky courts in their construction of this statute, we would wholly disregard its provisions, and hold that the negotiability or non-negotiability of these notes, as well as their liability or non-liability to set-off, is to be : determined by our own statute (S. & C. 862), which declares such notes to be “negotiable by indorsement thereon so as absolutely to transfer and vest the property thereof in each and every indorsee.” Such was the holding in the • case of Davis v Morton, 5 Bush, 160. That was an action brought in Kentucky, by the indorsee, against the maker ■ of a m gotiable promissory note made in Tennessee, where such notes are negotiable as commercial paper, and indorsed before due. The defendant pleaded a set-off of a claim against the maker of the note. The court held that under ’ *174 ■•the statute in question the set-off was allowable. In delivering the opinion in the ease the court say:
“ Such paj>er in this state would be a promissory note, .assignable under our statutes, subject, however, to all the ■ equities and defenses existing between the original parties, .and any payments or offsets before notice of assignment; whilst, by the statutes and numerous decisions of the Supreme Court of Tennessee, it would be regarded as commercial paper, and not liable to such defenses in the hands of an assignee in good faith, who had taken it in the usual • course of business.' . . .
“A set-off is but a part of the remedy, and as this paper ■would be regarded by the laws of Kentucky a mere promissory note, to which the right of set-off’ would attach, .and .as comity does not require us to reject any right of defensa permissible under our laws because this paper was made in Tennessee, where such defense would not be allowed, and as our own, and all other citizens seeking our forums, should be satisfied with the administration of remedies ac- ■ cording to our laws, this set-off, if established according to the allegations of the answer, should be allowed.”
Now, while I am quite willing to admit that this decis'ion of the Kentucky court is bad'law, in so far as it denies to Tennessee the right to fix the negotiable character of its •own paper,I think it ought to be regarded as good authority to show that by the true construction of the Kentucky .statute, it can have no extra-territorial effect in matters of .set-off’. It is the judicial construction of her own statute by a court of Kentucky, to the effect that as to matters of : set-off, the statute was intended to be remedial, and to have ■ effect only in actions brought in Kentucky. It is a declaration, in effect, that outside of Kentucky, notes made under this statute are to be regarded as negotiable paper, according to the laws of the place where' suit is brought, not only to the effect of defeating any right of set-offj but to the extent of defeating all defenses to the action. In -other words, our construction of the Kentucky statute *175 gives to it an extra-territorial vigor and effect, which, by implication at least, is denied to it by her own courts.
We think the court erred in allowing any set-off in the ■case.

Judgment reversed.